IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL TODD BECHTOLD,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:19-CV-0085-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 6 and 7), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 14 and 19).

   The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on May 4, 2015.  See CAR 16.[1]  In the application, plaintiff claims disability began on October 18, 2013.  See id.  At the hearing, plaintiff amended the alleged onset date to October 23, 2015, "his 50th birthday."  ECF No. 14, pg. 3; see also CAR 16.  The ALJ noted the amendment was made on the advice of his representative and accepted the amendment.  See CAR 16.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on September 14, 2017, before Administrative Law Judge (ALJ) Vincent A. Misenti.  In a January 31, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): post-laminectomy syndrome of the lumbar spine; anxiety disorder; panic disorder; depressive disorder; alcohol abuse; and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work; he cannot crawl or climb ladders, ropes, or scaffolds; he can only occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; he cannot work around unprotected heights; he must avoid concentrated exposure to moving mechanical parts; he is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks; he is able to use judgment on only simple work-related decisions;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-28.

After the Appeals Council declined review on November 4, 2018, this appeal followed.

/ / /

/ / /

/ / /

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on April 23, 2019 (ECF No. 9).

### III. DISCUSSION

In his brief, plaintiff argues: (1) the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr. Aki; (2) the ALJ failed to provide sufficient reasons for rejecting his testimony and statements as not credible; and (3) the ALJ's finding that plaintiff can perform light, as opposed to sedentary, work is not supported by adequate rationale.

#### A.  **Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

///

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,

///

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

At Step 4, the ALJ considered the medical opinion evidence of record in determining plaintiff's residual functional capacity. See CAR 24-26. Specifically, the ALJ considered the opinions of G. Taylor, M.D., and E. Christian, M.D., the agency non-examining medical consultants, Shahid Ali, M.D., the agency examining medical consultant, and Les P. Kalman, M.D., and Aroon Suansilppongse, M.D., the agency examining psychological consultants. CAR 24-26. The ALJ's assessments of the opinions related to plaintiff's physical capacity are summarized below:[2]

| Doctor(s) | ALJ's Assessment |
|---|---|
| Taylor and Christian | Some weight. Opinions are generally consistent with the objective evidence, but the opinions somewhat overstate plaintiff's physical capacity and do not adequately consider plaintiff's subjective complaints. See ECF No. 24. |
| Ali | Little weight. Opinion understates plaintiff's physical capacity; doctor did not review diagnostic imaging showing no more than mild findings; opinion is inconsistent with objective findings; doctor not aware of plaintiff's alcohol abuse. See id. |

Plaintiff contends the ALJ erred with respect to Dr. Ali's opinions. As to Dr. Ali, the ALJ stated:

> Shahid Ali, M.D., who conducted an orthopedic consultative examination on May 23, 2017, concluded that the claimant was restricted to sedentary exertion, no postural activities, only occasional overhead reaching, only occasional operation of foot controls, and limited exposure to hazards (Exhibit 10F). This opinion understates the claimant's physical capacity and is given little weight because Dr. Ali did not review the diagnostic images of the claimant's spine, which showed no more than mild findings and do not support the serious limitations assessed by Dr. Ali (Exhibits 1F/23, 9F/39, and 9F/40-41). In addition, the opinion[] is inconsistent with the lack of electrodiagnostic findings concerning the claimant's lumbar radiculopathy. Moreover, the opinion is contradicted by the claimant's generally normal motor and sensory function (Exhibits 1F, 7F,

---

[2] Plaintiff does not take issue with the ALJ's assessments of the opinions relating to mental limitations.

and 9F). Furthermore, the opinion is inconsistent with the claimant's ability to care for his own personal hygiene, prepare simple meals, and drive a car (Exhibits 4E, 10F, 11F, and hearing testimony). Finally, the undersigned notes that Dr. Ali was not aware of the claimant's alcohol abuse.

CAR 24-25.

Plaintiff argues that, under the "clear and convincing" standard, the ALJ failed to provide sufficient reasons for giving Dr. Ali's opinion only little weight. Plaintiff contends:

> The ALJ first gives Dr. Ali's opinion little weight because Dr. Ali did not review the diagnostic images of claimant's spine which show only mild findings. However, the ALJ himself intentionally ignores a potentially significant finding from plaintiff's MRI, i.e., the fact that the imaging shows a disc remnant contacting the exiting right L5 nerve root. [TR 572] When describing the MRI in more detail in his decision, the ALJ ignores this significant finding. It is not entirely clear then that the diagnostic imaging shows only mild findings, rather the imaging indicates potential nerve root compromise.
> The ALJ further finds Dr. Ali's opinion inconsistent with "the lack of electrodiagnostic findings concerning the claimant's lumbar radiculopathy." The lack of this testing does not clearly establish that Dr. Ali's opinion is not reliable. It appears that from the time plaintiff was seen by neurosurgeon Dr. Duong, he had obtained all recommended conservative treatments: plaintiff attended physical therapy, had an epidural injection, was unable to tolerate bilateral lumbar medial branch block injection several months before the hearing, and was returned for additional therapy. It is not clear that plaintiff's treatment modalities had reached the appropriate point where electrodiagnostic testing was warranted.
> The ALJ also states that Dr. Ali's opinion is contradicted by generally normal motor and sensory function. In reaching this conclusion, the ALJ relies on exhibits 1F and 7F, which predate the amended onset date. As noted, plaintiff's spinal impairments have progressively worsened over time. Records closer in time to Dr. Ali's evaluation do document abnormal motor and sensory function. [See e.g., 579-80, 758] At many other visits, these functions were not tested at all. Accordingly, it is not clear and convincing that supposed normal motor and sensory findings (primarily prior to the amended alleged onset date) render Dr. Ali's opinion unreliable.
> ALJ Misenti also relies on claimant's ability to "care for his own personal hygiene, prepare simple meals, and drive a car" as discrediting Dr. Ali's opinion. First of all, it should be noted that Dr. Ali's opinion simply limits plaintiff to sedentary work (lift/carry 10 pounds occasionally; stand 2 hours in an 8 hour workday, no sitting limitations) with need for a walker to ambulate. None of the described activities are inconsistent with Dr. Ali's determined limitations. Further, plaintiff described his ability to perform these activities as significantly constrained at the time of hearing. Plaintiff testified he "tried not to drive much and his kids usually drove, but he liked to go to the grocery store if he felt good enough." [TR 39] He didn't do household chores but could make a sandwich or microwave himself something. He required his wife's assistance to put on shoes or underwear or socks. [TR 49]

8

The final reason given by the ALJ for giving Dr. Ali's opinion "little weight" is that "Dr. Ali was not aware of the claimant's alcohol abuse." Consistent with plaintiff's testimony, the medical evidence indicates that claimant last drank at the end of March 2014. There are no references to alcohol use in the medical records after this date indicating that alcohol use was not a problem after March 2014. There is no nexus between plaintiff's use of alcohol in 2014 and Dr. Ali's opinion in May 2017. Thus, plaintiff's remote alcohol use does not support that Dr. Ali's opinion is unreliable.

ECF No. 14, pgs. 13-15.

Regarding whether plaintiff's stated daily activities provide a sufficient reason to discredit Dr. Ali's opinion, the Court agrees with plaintiff that they do not. According to the ALJ, plaintiff stated he can: ". . .care for his own personal hygiene, prepare simple meals, and drive a car." CAR 25 (citing Exhibits 4E, 10F, 11F, and hearing testimony). As plaintiff notes, these activities are not inconsistent with Dr. Ali's opinion that plaintiff is limited to sedentary work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). Moreover, as plaintiff testified at the hearing, his daily activities are constrained. See CAR 39, 49.

The court also agrees with plaintiff that there is little to no nexus between plaintiff's last abuse of alcohol in 2014 and Dr. Ali's lack of awareness of this fact at the time he rendered his opinions in 2017. Notably, the Commissioner did not cite alcohol abuse as a material factor in the disability determination. Alcohol abuse that ended in 2014 is of little relevance given the amended onset date of October 2015.

The ALJ cited Dr. Ali's lack of review of diagnostic imaging of plaintiff's spine. In his brief, plaintiff contends the ALJ ignored MRI evidence. The extent to which the ALJ did or did not note MRI evidence does not gainsay the ALJ's conclusion that Dr. Ali's opinions do not reflect a review of other diagnostic imaging of record. In other words, even if Dr. Ali did in fact review MRI evidence, the fact remains that the doctor did not review other diagnostic imaging evidence of record which showed only mild findings. The lack of review of all available objective evidence undercuts the reliability of Dr. Ali's opinions and is sufficient reason for the ALJ to have discounted them.

**B.     Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

10

physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

///

///

///

At Step 4, the ALJ evaluated plaintiff's subjective statements and testimony in determining residual functional capacity. See CAR 22-24. The ALJ summarized plaintiff's statements and testimony as follows:

> The claimant complains of chronic back pain that radiates to the lower extremities, causing pain, numbness, and tingling. He also complains of anxiety, daily panic attacks, and depression. His pain allegedly exacerbates his mental symptoms. He allegedly has difficulty performing physical exertion, doing postural activities, completing tasks, following instructions, understanding, concentrating, paying attention, remembering, and handling stress. He allegedly needs to lie down, rest, and change positions frequently throughout the day. His medications cause dizziness, drowsiness, sleepiness, shaking, fatigue, blurred vision, dry mouth, poor motivation, and concentration problems (citations to the record omitted).

CAR 22.

The ALJ determined these allegations are not fully credible on the context of the record as a whole. See id. The ALJ stated:

> The claimant underwent a back surgery in 1998. His back pain has allegedly worsened for the last several years and he has been diagnosed with post-laminectomy syndrome of the lumbar spine (e.g., Exhibit 9F). During the adjudicative period, he was treated with pain medications, chiropractic care, steroidal injections, physical therapy, and nerve ablation (e.g., Exhibits 9F, 10F, 13F, and hearing testimony). However, x-rays of his thoracic and lumbar spine dated May 21, 2014, showed only mild age-related spondyloarthropathy (Exhibit 1F/23). X-rays of his lumbar spine dated May 19, 2016, revealed only mild spondylosis and mild degenerative changes (Exhibit 9F/40-41). An MRI of his lumbar spine dated May 27, 2016 showed only mild neural foraminal stenosis and no significant spinal canal stenosis (Exhibit 9F/39). During the adjudicative period, he had tenderness in the back sometimes and demonstrated limited range of motion on a few occasions, but, overall, the treatment records documented relatively few relevant clinical signs, such as diminished range of motion (Exhibits 1F, 7F, and 9F). Although he complains of radicular symptoms in the lower extremities, the record contains no relevant positive findings from a nerve conduction study or an electromyogram. In fact, his motor and sensory function was generally normal (Exhibits 1F, 7F, and 9F). Moreover, according to a treatment record dated June 3, 2016, there is no medical need for another surgery as there is no evidence of disc herniation, central stenosis, or significant foraminal stenosis (Exhibit 9F/42).
>
> Although the claimant allegedly uses a cane and a walker, there is little definitive evidence that a physician prescribed long-term use of a hand-held assistive device. In addition, the mild findings from diagnostic images of the claimant's spine and the lack of electrodiagnostic findings or neurologic signs regarding his radicular symptoms do not support an ongoing need for a hand-held assistive device. He sometimes demonstrated abnormal gait during the adjudicative period, however, at a

> physical examination held on June 3, 2016, his gait was within normal limits when he was not being watched, and he started changing his gait when he was being watched (Exhibit 9F/41).
>
> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by his own medical source. Yet a review of the record in this case reveals no restrictions recommended by his own medical source.
>
> The claimant has received specialized mental health treatment for his mental symptoms, and he was often noted to be depressed, anxious, and sad during the adjudicative period (Exhibits 2F and 9F). However, the medical records reflect that her [sic] mental functioning was generally adequate throughout the adjudicative period. He generally exhibited good grooming, appropriate attire, good eye contact, normal behavior, pleasant and cooperative demeanor, normal speech, appropriate affect, logical thought process, normal thought content, full orientation, normal attention, normal concentration, intact memory, normal fund of knowledge, good impulse control, good insight, and good judgment (Exhibits 2F/4, 9F/7, 9F/19, 9F/27, 9F/53, and 9F/55). In addition, he was cooperative and well-groomed on May 19, 2016, and had normal mood and affect on January 13, 2017 (Exhibits 9F/14 and 9F/49). During a mental consultative examination conducted on May 26, 2017, he was depressed, tense, angry, irritable, and emotionally restricted, but he demonstrated cooperative behavior, fair eye contact, full orientation, average intelligence, intact abstractions, fair insight, fair judgment, logical and goal-directed thought process, and normal thought content. While at this examination, he had some difficulties with the memory task and the serials test, but he was able to recall at least 2 out of 3 objects after a 5-minute delay, spell a work backwards, and perform a simple mathematical calculation (Exhibit 11F).
>
> In addition, the claimant's psychotropic medication is admittedly effective in reducing his mental symptoms (e.g., Exhibit 2F/2 and hearing testimony). Moreover, despite the allegations of frequent panic attacks, he has not been hospitalized for psychiatric treatment since the amended alleged disability onset date (Exhibit 11F).
>
> The undersigned observed that the claimant was able to respond to questions, interact appropriately, follow closely, and participate fully during the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of mental problems on a day-to-day basis, the apparent lack of serious mental difficulties during the hearing is somewhat inconsistent with the alleged severity of his symptoms.

CAR 22-23.

The ALJ next discussed plaintiff's history of alcohol abuse, the alleged side effects of medication, and obesity and stated that all were accommodated in the residual functional capacity assessment. See id. at 23-24.

13

Regarding plaintiff's daily activities, the ALJ stated:

> Although the claimant has described daily activities that are highly limited, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's allegedly limited daily activities are considered to be outweighed by the other factors discussed in this decision. In fact, according to the function report and consultative examination reports, he is able to care for his own personal hygiene, prepare simple meals, manage his own transportation, and pay his own bills (Exhibits 4E, 10F, and 11F). In addition, according to his hearing testimony, he has the ability to drive a car, which requires considerable motor function, physical exertion, and mental capacity.

CAR 24.

Plaintiff challenges the ALJ's citation to the diagnostic imaging, plaintiff's use of a cane/walker, and daily activities. Not discussed by plaintiff in his brief plaintiff's apparent symptom exaggeration at a medical examination or the ALJ's observations of plaintiff at the hearing.

    1.    <u>Diagnostic Imaging</u>

According to plaintiff:

> The ALJ first finds plaintiff not credible based on mild findings on imaging. As noted supra, the ALJ mischaracterized plaintiff's MRI, ignoring that it demonstrated nerve root contact. However, even if the objective findings did not fully support the severity of symptoms and limitations alleged, this is an improper basis to discredit the opinion. Objective evidence need not support the level of severity alleged. "The pain threshold for individuals can vary markedly. Some people suffer the residuals of major physical insult without complaint. Other people suffer pain for unknown reasons in excess of what might be anticipated from the reports in their medical records." <u>Stewart v. Sullivan</u>, 881 F.2d 740 (9th Cir. 1989). The test set out in <u>Cotten v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1991), "imposes only two requirements on the claimant: (1) he must produce objective medical evidence of an impairment or impairments; and (2) he must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." Smolen, 80 F.3d at 1282 (emphasis in original). Plaintiff in fact met his burden under the <u>Cotten</u> test, and the ALJ so found in his opinion. [TR 22].

ECF No. 14, pg. 15.

///

///

The Court does not agree that the ALJ violated the Cotton threshold. To the contrary, it was followed appropriately. First, the ALJ determined that plaintiff's alleged symptoms could be explained by plaintiff's objective limitations. Second, the ALJ determined that plaintiff's statements as to the severity of those symptoms are not credible. This is framework for analysis established in Cotton. The court finds the ALJ permissibly noted that objective imaging evidence showing only mild findings is inconsistent with subjective allegations of disabling pain. The ALJ did not, as plaintiff contends, discredit plaintiff's allegations because of the absence of objective proof of disabling pain. Rather, the ALJ discounted plaintiff's allegations of disabling pain because of the existence of evidence showing only mild objective findings.

### 2. Use of a Cane/Walker

Regarding the ALJ's citation to plaintiff's use of a cane/walker, plaintiff contends:

> The ALJ finds plaintiff's use of a walker and cane are not necessary as there is not definitive evidence they were prescribed, and at times his gait was not abnormal. [TR 23] That plaintiff did not prove the cane and walker were prescribed does not establish he does not need them. Many of the treatment records note that plaintiff used a cane or walker, but the record does not contain any statements indicating plaintiff's doctors felt he should not use the assistive devices. Difference in gait may be dependent on deviations in pain levels. Moreover, plaintiff's gait worsened over time. Further, Dr. Ali opined that plaintiff did need to use a walker based on his examination findings. Thus, it is not clear and convincing that plaintiff's use of a cane or walker was not medically necessary.

ECF No. 14, pgs. 15-16.

As plaintiff admits, no doctor has prescribed him an assistive device. Although Dr. Ali opined that plaintiff could benefit from the use of such a device, the doctor is not plaintiff's prescribing physician and, in any event, the ALJ properly discounted Dr. Ali's opinions for the reasons discussed above.

### 3. Daily Activities

Finally, as to daily activities, plaintiff argues:

> The ALJ also relies on plaintiff's ability to care for personal hygiene, prepare simple meals, manage transportation, pay bills, and drive a car as a basis for finding plaintiff not credible. "The Social Security Act

> does not require that claimants be utterly incapacitated to be eligible for benefits, and many activities may not be easily transferable to a work environment where it might be impossible to rest periodically." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) In fact, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations... Only if the level of activity were inconsistent with a claimant's claimed limitations would these activities have any bearing on claimant's credibility." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). The limited activities described by plaintiff in his testimony are not inconsistent with his alleged limitation to sedentary work.

ECF No. 14, pg. 16.

Plaintiff's argument is unpersuasive. As explained above, the ALJ properly relies on daily activities that are inconsistent with the alleged level of disability. In this case, plaintiff alleges totally debilitating symptoms. The record, however, reflects that plaintiff performs daily activities that are not consistent with this allegation. As the ALJ noted, plaintiff is able to care for his own personal hygiene, prepare simple meals, manage his own transportation, pay his own bills, and drive a car. These activities are easily transferrable to the level of exertion the ALJ found plaintiff retains – light work.

          4.      <u>Symptom Exaggeration and Observations at the Hearing</u>

The ALJ noted in the decision two reasons not discussed by plaintiff for discounting his statements and testimony as not fully credible. First, the ALJ noted that plaintiff appeared to exaggerate symptoms at a medical evaluation. Specifically, at a June 2016 evaluation plaintiff was noted to change his gait when being watched by the examiner. Second, the ALJ recounted his own observations of plaintiff's conduct at the hearing, noting that it did not appear that plaintiff was as limited as he alleges. Both reasons – again, not discussed by plaintiff – support the ALJ's adverse credibility finding.

/ / /

/ / /

/ / /

/ / /

/ / /

### C. **Residual Functional Capacity**

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[3]

At Step 4, the ALJ ultimately concluded plaintiff can perform light work with certain limitations. Plaintiff argues the ALJ erred in reaching this conclusion because he failed to give adequate weight to Dr. Ali's opinions and there is no other medical opinion evidence supporting the ALJ's finding. According to plaintiff:

> The ALJ committed error because he failed to provide any explanation as to how or why he determined plaintiff was capable of light work, rather than sedentary as determined by Dr. Ali. The ALJ did not explain why 20 pounds was possible rather than 10 (or some other number) or why 6 hours of standing and walking was possible rather than 2 (or some other number). This being the case, the ALJ's finding is entirely arbitrary. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d at 421-422. (footnote omitted).
> Further, as there is NO medical opinion which supports the ALJ's determination that plaintiff is capable of light work, the ALJ improperly acted as a medical expert, which is prohibited by law. ALJs are not trained medical experts and it is well-established that they may not substitute their own opinion for that of a medical professional. See, e.g., Meece v. Barnhart, 192 Fed. Appx. 456, 465 (6th Cir. 2006); Pietrunti v. Director, 119 F.3d 1035, 1044 (2nd Cir. 1997); Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). The ALJ improperly acted as his own medical expert error,

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

> when he should have obtained testimony from a qualified medical expert at the hearing.

ECF No. 14, pgs. 17-18.

Plaintiff's challenge to the ALJ's ultimate residual functional capacity finding is derivative of plaintiff's argument, discussed above, concerning Dr. Ali's opinions. Because the court finds no error with respect to the ALJ's assessment of Dr. Ali's opinions, plaintiff's argument as to the ALJ's ultimate residual functional capacity finding is likewise unpersuasive.

Finally, contrary to plaintiff's assertion that there is no evidence supporting an ability to perform light work, the assessments of G. Taylor, M.D., and E. Christian, M.D., the agency non-examining medical consultants, concluded that plaintiff could perform medium work. But, because the ALJ determined the doctors somewhat overstated plaintiff's ability, the ALJ reduced his residual functional capacity determination to an ability to perform light work. Opinion evidence that plaintiff can perform medium work certainly supports the ALJ's conclusion that plaintiff can perform work at a lower degree of exertion.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;
2. Defendant's motion for summary judgment (ECF No. 19) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  May 8, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE